1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## DISTRICT OF NEVADA

8
9   WILLIAM FILLMORE,

10              Petitioner,                          3:04-cv-0715-JCM-VPC

11   vs.
                                                     **ORDER**
12   MICHAEL BUDGE, *et al.*,

13              Respondents.

14   _____/

15

16   Introduction and Background

17          This action is a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C.

18   § 2254, by William Fillmore, a prisoner at the Nevada State Prison, in Carson City, Nevada.

19   Fillmore was convicted upon a jury verdict, in Nevada's Fourth Judicial District Court, of attempted

20   murder with the use of a deadly weapon.  The conviction resulted from the shotgun shooting of an

21   individual named John Hamilton on October 1, 2000, near Carlin, Nevada.

22          The judgment of conviction was entered on November 2, 2001.  Exhibit 1.  Fillmore

23   was sentenced to two consecutive sentences of 32 to 144 months.  *Id.*

24          Fillmore appealed to the Nevada Supreme Court, and that court affirmed on

25   November 5, 2002.  Exhibit 8.

26

1    On May 30, 2003, Fillmore filed a petition for a writ of habeas corpus in the state

2    district court.  Exhibit 9.  The state district court held an evidentiary hearing on January 6, 2004.

3    Exhibit 10.  On February 24, 2004, the petition was denied.  Exhibit 11.  Petitioner appealed, and the

4    Nevada Supreme Court affirmed on October 6, 2004.  Exhibit 14.

5    Fillmore initiated this federal habeas corpus action on December 9, 2004.  The

6    petition was filed on March 11, 2005, after the matter of payment of the filing fee was resolved

7    (docket #6).  Respondents filed an answer (docket #14), and Fillmore replied (docket #18).

8    On June 6, 2008, the court entered an order (docket #22), ruling that one of Fillmore's

9    claims – ground 15 – was unexhausted in state court.  The court required Fillmore to make an

10   election, to either abandon ground 15 or move for a stay under *Rhines v. Weber*,

11   544 U.S. 269 (2005), so that he may return to state court and exhaust the unexhausted claim.

12   On June 23, 2008, Fillmore filed a notice (docket #23) stating his election to abandon ground 15.

13   Also, in the June 6, 2008 order, the court directed the respondents to expand the

14   record, pursuant to Rule 7 of the Rules Governing Section 2254 Cases in the United States District

15   Courts, by filing a copy of the entire record from the trial court, a copy of the entire record from the

16   direct appeal, and a copy of the entire record from the state habeas proceedings.  Respondents

17   complied with that order on July 21, 2008 (docket #25, #26, #27, #28).[1]

18   The abandonment of ground 15 leaves sixteen claims to be resolved on their merits.

19   Federal Habeas Corpus Standards

20   28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act

21   of 1996 (AEDPA), provides the legal standard for the court's consideration of this habeas petition:

22

23   An application for a writ of habeas corpus on behalf of a person
     in custody pursuant to the judgment of a State court shall not

24   be granted with respect to any claim that was adjudicated on the merits
     in State court proceedings unless the adjudication of the claim --

25

26

---

[1] Unless otherwise stated, the exhibits referred to in this order are those filed by respondents and found in the record at docket #15, #25, #26, #27, and #28.

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of section 2254(d), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of section 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (quoting *Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness

1  by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

2  Standards Governing Claims of Ineffective Assistance of Counsel

3        In several of Fillmore's claims, he asserts that his counsel was ineffective, in violation

4  of his constitutional rights.

5        In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established the

6  standards by which claims of ineffective counsel are to be adjudicated.  In *Strickland*, the Court

7  propounded a two prong test; a petitioner claiming ineffective assistance of counsel must

8  demonstrate (1) that the defense attorney's representation "fell below an objective standard of

9  reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that

10  "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

11  proceeding would have been different."  *Strickland*, 466 U.S. at 688, 694.

12        Regarding the first prong – commonly known as the "effectiveness prong" – the

13  *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond

14  generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to

15  advocate the defendant's cause, and the duty to communicate with the client over the course of the

16  prosecution.  *Id*.  Defense counsel's duties are not to be defined so exhaustively as to give rise to a

17  "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the

18  constitutionally protected independence of counsel and restrict the wide latitude counsel must have

19  in making tactical decisions."  *Id*.

20        The *Strickland* Court instructed that review of an attorney's performance must be

21  "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in

22  order to avoid the "distorting effects of hindsight."  *Id*. at 689.  A reviewing court must "indulge a

23  strong presumption that counsel's conduct falls within the wide range of reasonable professional

24  assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action

25  might be considered sound trial strategy."  *Id*. (citation omitted).

26        Construing the Sixth Amendment to guarantee not effective counsel per se, but rather

4

1   a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that

2   counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding

3   of ineffective assistance.  In order to satisfy *Strickland's* second prong, the defendant must show that

4   the attorney's sub-par performance prejudiced the defense.  *Id*. at 691-92.  The test is whether there

5   is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding

6   in question would have been different.  *Id*. at 691-94.  The Court defined reasonable probability as "a

7   probability sufficient to undermine confidence in the outcome."  *Id*. at 694.

8   <u>Analysis</u>

9   <u>Grounds 1 and 3</u>

10   In ground 3, Fillmore claims that his constitutional rights were violated because the

11   trial court failed to hold a hearing to determine whether he was competent to stand trial.  Petition for

12   writ of habeas corpus (docket #6) (hereafter "petition"), pp. 7-7A.  In ground 1, Fillmore claims that

13   his constitutional rights were violated because his counsel was ineffective for not raising the issue of

14   his competence.  *See id*. at 3-3C.

15   With respect to this claim, the state district court ruled as follows: "No credible

16   evidence was presented to the court to support the proposition that petitioner lacked competency to

17   stand trial or that a competency hearing was justified."  Order denying petition for writ of habeas

18   corpus, Exhibit 11, p. 1.  The Nevada Supreme Court affirmed this ruling.  Exhibit 14.

19   Fillmore asserts in his habeas petition that he had been suicidal about a month before

20   the shooting of Hamilton.  *See* Petition, p. 3A.  "Suicidal," however, does not mean "incompetent."

21   In *Pate v. Robinson*, 383 U.S. 375 (1966), the Supreme Court held that state courts

22   must follow adequate procedures to protect against the conviction of criminal defendants who are

23   incompetent to stand trial.  *Pate*, 383 U.S. at 386.  The standard for competence to stand trial looks

24   to whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable

25   degree of rational understanding" and has "a rational as well as factual understanding of the

26   proceedings against him."  *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Dusky v. United*

5

1    *States*, 362 U.S. 402 (1960)); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975).  When "the

2    evidence raises a 'bona fide doubt'" about the defendant's competence to stand trial, the trial court

3    must conduct an evidentiary hearing.  *Pate*, 383 U.S. at 385; *see also Odle v. Woodford*, 238 F.3d

4    1084, 1087 (9th Cir. 2001).   Due process requires an evidentiary hearing where substantial evidence

5    before the court "indicate[s] the need for further inquiry" into the defendant's competency.  *Drope v.*

6    *Missouri*, 420 U.S. 162, 180 (1975).  Because there are no "fixed or immutable signs which

7    invariably indicate the need for further inquiry to determine fitness to proceed[,] the question

8    [of competency] is often a difficult one in which a wide range of manifestations and subtle nuances

9    are implicated." *Id.*

10          Fillmore has pointed to no evidence in the record – and the court has found none –

11   raising any doubt regarding his competence.

12          Moreover, at the evidentiary hearing on Fillmore's state court habeas petition,

13   Fillmore testified as follows:

14          Q. [by Matthew J. Stermitz, Fillmore's state court habeas counsel]:
             ... One of the issues that your law clerk and you raised was the fact that you
15           were not given a competency examination prior to trial.

16          Did you have any mental health issues at the time of trial or during this
             prosecution?

17

18          A. [Fillmore]:  No, I did not.

19          Q.     Do you think you were competent to testify?

20          A.     Yes, I do.

21          Q.     Do you think you were – you understood what was going on?

22          A.     Yes.  I understood very well what was going on.

23   Transcript of Evidentiary Hearing, Exhibit 10, p. 13, lines 15-23.

24          The Nevada courts' rulings on these claims was not contrary to, or an unreasonable

25   application of, clearly established federal law as determined by the Supreme Court of the United

26   States.  *See*  28 U.S.C. § 2254(d).   The court will deny habeas corpus relief with respect to grounds

1 and 3.

Ground 2

In ground 2, Fillmore claims that his constitutional rights were violated because his counsel was ineffective for failing to call any witnesses or submit any mitigating evidence at sentencing. Petition, pp. 5-5B. Specifically, Fillmore claims that his counsel should have presented several character witnesses, as well as evidence regarding his mental state. *Id*. at 5B. Fillmore asserts that "[t]his would have included live testimony from family, friends, relatives, work associates, and community members which would have testified to the morals, character, and community involvement of the Petitioner." *Id*.

With respect to this claim, the trial court pointed out that Fillmore's presentence report included information about his work and criminal history, and provided the court with biographical information about Fillmore. Exhibit 11, pp. 1-2. The court ruled that Fillmore's claim that he would have received a more favorable sentence had character witnesses been presented was "speculative at best." *Id*. at 2. The Nevada Supreme Court affirmed this ruling. Exhibit 14, p. 2.

This court concurs. Fillmore has not explained how character witnesses would have added anything meaningful to the information before the court at sentencing. The sentencing court had ample information regarding Fillmore's background. Furthermore, the court had heard, during the trial, a great deal of testimony concerning Fillmore's mental state. The court was well aware that, when the shooting of Hamilton occurred, Fillmore was distraught, and perhaps even suicidal, as a result of his separation from his wife. The witnesses suggested by Fillmore would have added nothing of substance to the sentencing proceeding.

The Nevada courts' ruling on this claim was not contrary to, or an unreasonable application of, *Strickland* or any other clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). The court will deny habeas corpus relief with respect to ground 2.

<u>Ground 4</u>

In ground 4, Fillmore claims that his constitutional rights were violated because his counsel was ineffective in not calling him to testify at trial. Petition, pp. 9-9A.

On this claim, the state district court ruled as follows:

> Trial counsel advised Petitioner that if he testified, he would be vigorously cross-examined by the prosecutor and that taking the stand would not be beneficial. The evidence received at the Petition hearing shows that the Petitioner chose not to testify after consultation with his trial counsel.

Exhibit 11, p. 2. The Nevada Supreme Court affirmed this ruling. Exhibit 14, p. 2.

A defense attorney's tactical decisions made after thorough inquiry are "virtually unchallengeable." *Furman v. Wood*, 190 F.3d 1002, 1007 (9th Cir. 1999) (*quoting Strickland*, 466 U.S. at 690). The decision that Fillmore would not testify was plainly a tactical decision. It is obvious from a reading of the trial transcript that Fillmore would have been subject to damaging cross-examination had he testified. *See*, *e.g.*, Exhibit 16d, part 5, pp. 660-69 (transcript of portion of prosecution's closing argument).

The Nevada courts' ruling that counsel was not constitutionally ineffective with respect to this tactical decision was not contrary to, or an unreasonable application of, *Strickland*, or any other clearly established federal law as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). The court will deny habeas corpus relief with respect to ground 4.

<u>Ground 5</u>

In ground 5, Fillmore claims that his constitutional rights were violated because his counsel was ineffective in that he conducted an insufficient investigation of the case, and, specifically, failed to discover three shotgun shells at Fillmore's house. Petition, pp. 11-11C. The theory of the prosecution was that Fillmore had used one of those shotgun shells, which had evidently been obtained from an acquaintance, to shoot the victim; Fillmore asserts that, if counsel had discovered the unused shells, this evidence could have been used to support his position, that the

1    victim, rather than Fillmore, brought the shotgun to the scene of the shooting. *See id*.

2          Fillmore claims, as follows, that his father found the three shotgun shells long after

3    the conclusion of the trial:

4          After the trial ended in this case, Petitioner's father, Charles W.
          Fillmore secured the property from Petitioner's house and transported the
5          property to South Dakota, where he placed the entire contents of Petitioner's
          property into storage.  Approximately one (1) year later, Petitioner's father
6          was sorting through Petitioner's stored property and located the three (3) .410
          shotgun shells that was extremely important and relevant in proving
7          Petitioner's defense at trial.

8    Petition, p. 11A (as in original).

9          Fillmore's father testified at the evidentiary hearing in the state habeas proceeding

10   about his discovery of the shotgun shells.  *See* Exhibit 10, pp. 4-10.

11         In its order denying Fillmore habeas corpus relief, the state district court apparently

12   found that the shotgun shells were discovered by Fillmore's father in the manner alleged.

13   *See* Exhibit 11, p. 2.  However, the state district court denied relief on this claim, ruling as follows:

14         The circumstances surrounding the history of the three shotgun shells
          is unclear.  The Court concludes that the evidentiary value of shells at trial
15         would not have had a material impact on the verdict, and the Court further
          concludes that a different result would not be probable on retrial.

16

17   *Id*. at 2-3.  The Nevada Supreme Court affirmed this ruling.  Exhibit 14, p. 2.

18         This court agrees with the state courts' assessment.  Uncertainty regarding where

19   Fillmore obtained the shotgun shell used to shoot Hamilton does not necessarily raise a reasonable

20   doubt regarding Fillmore's guilt.  Assuming, for purposes of analysis, that counsel's investigation

21   was deficient, the resulting prejudice must be weighed in light of the strength of the government's

22   case.  *See Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir. 2001).  There was strong evidence

23   at trial – including, most importantly, Hamilton's first-hand description of the shooting (Exhibit 16a,

24   part 2, p. 54 - Exhibit 16b, part 2, p. 120) – indicating that Fillmore shot Hamilton and that the

25   shooting was intentional.   This court finds no reasonable probability that, had counsel found the

26   three shotgun shells at Fillmore's home, the result of the trial would have been different.  *See*

9

1    *Strickland v. Washington*, 466 U.S. 668, 691-94 (1984).

2          The Nevada courts' ruling that counsel was not constitutionally ineffective with

3    respect to investigation, because there was no reasonable probability of prejudice, was not contrary

4    to, or an unreasonable application of, *Strickland*, or any other clearly established federal law, as

5    determined by the Supreme Court of the United States.  *See*  28 U.S.C. § 2254(d).   The court will

6    deny habeas corpus relief with respect to ground 5.

7                          Grounds 6 and 13

8          In ground 13, Fillmore claims that his constitutional rights were violated because a

9    police officer who testified for the prosecution commented that, at the time of his arrest, Fillmore

10   refused to speak to the officer.  Petition, pp. 27-27B.  In ground 6, Fillmore claims that his

11   constitutional rights were violated because his counsel was ineffective for advising him to request

12   only a curative instruction, rather than a mistrial.    *Id*. at 13-13B.

13          This claim focuses on the following exchange during testimony at trial by Chadwick

14   Pope, the police officer who arrested Fillmore:

15                 Q. (by the prosecutor):  What happened next?

16                 A. (by Officer Pope):  I tried to talk to Mr. Fillmore he would not
                   speak to me at all.

17

18   Exhibit 16c, part 4, p. 423, lines 3-5.  Defense counsel objected, and asked for a sidebar.  *Id*. at

     p. 423, line 6.  At the sidebar, the trial judge asked defense counsel what he wanted to do, and
19
     counsel stated that he wished to confer with Fillmore.  *Id*. at p. 423, line 24 - p. 424, line 7.  After
20
     conferring with Fillmore, defense counsel said the following to the trial judge, out of the presence of
21
     the jury:
22
                   Thank you, Your Honor.  And also thank the Court and counsel for
23          allowing me the opportunity to confer with my client.  I believe my obligation at
            this point was to convey to my client his options as to what we would ask for in
24          terms of remedy.  I did make a recommendation to Mr. Fillmore and I also
            indicated to him at some future point should things go bad that he could not
25          complain if he elected the option that we're electing.  Which is were asking that
            the witness be admonished to not have that type of reoccurrence.  In addition
26          we're asking for the strongest possible admonition that we can get for the jury to
            disregard that portion of the officer's testimony.

                                          10

1

2 *Id*. at p. 426, lines 4-14 (as in original).  After the jury returned, the judge instructed them as follows:

3
> Ladies and gentlemen of the Jury, the last answer of Officer Pope did implicate the defendant's right to remain silent.  And I would instruct the Jury

4
> that this was entirely improper under our constitution.  And the Court does order that answer stricken from the record.  The Court does admonish you to

5
> disregard it and it should [not] enter into your deliberations in any way.  Is there anybody on the Jury that cannot do that?  No. Okay.

6

7 *Id*. at p. 427, lines 13-20.

8      The Nevada Supreme Court addressed Fillmore's claim regarding this matter in its

9 order on the direct appeal.  That court stated:

10
> The district court adequately remedied any potential concerns arising from the isolated and unsolicited comment by a witness on Fillmore's post-arrest

11
> silence.

12 Exhibit 8, p. 2.

13      A prosecutor's comment on a defendant's silence violates the Due Process Clause.

14 *See Doyle v. Ohio*, 426 U.S. 610, 619 (1976) ("We hold that the use for impeachment purposes of

15 petitioners' silence, at the time of arrest and after receiving *Miranda* warnings, violated the Due

16 Process Clause of the Fourteenth Amendment.").   However, such error does not entitle a petitioner

17 to habeas corpus relief unless it "'had substantial and injurious effect or influence in determining the

18 jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 622 (1993) (quoting *Kotteakos v. United*

19 *States*, 328 U.S. 750, 776 (1946)).

20      Generally, there is no reversible *Doyle* error where the trial court "promptly sustains a

21 timely objection to a question concerning post-arrest silence, instructs the jury to disregard the

22 question, and gives a curative jury instruction."  *See United States v. Lopez*, 500 F.3d 840, 846

23

24

25 (9th Cir. 2007) (quoting *United States v. Foster*, 985 F.2d 466, 468 (9th Cir.1993), as amended,

26 995 F.2d 882 (9th Cir.1993) and 17 F.3d 1256 (9th Cir.1994)).

1    In this case, there was one isolated comment by the police officer concerning

2 Fillmore's post-arrest silence.  Fillmore's counsel objected immediately, and the objection was

3 sustained.  Fillmore and his attorney then apparently made a tactical decision not to move for a

4 mistrial, and to request only a curative instruction.  The trial judge gave a stern curative instruction

5 as requested.   Under these circumstances – and in view of the strong evidence against Fillmore –

6 this court finds the statement of the police officer about Fillmore's post-arrest silence to be harmless.

7 That statement cannot be said to have had a substantial and injurious effect or influence in

8 determining the verdict.

9    Moreover, the court finds that Fillmore's counsel was not ineffective in handling this

10 matter.  He objected immediately to the offensive comment, and, after conferring with Fillmore,

11 made a tactical decision to seek only a curative instruction.

12    The Nevada courts' rulings on these claims were not contrary to, or an unreasonable

13 application of, *Doyle* or *Strickland*, or any other clearly established federal law as determined by the

14 Supreme Court of the United States.  See  28 U.S.C. § 2254(d).   The court will deny habeas corpus

15 relief with respect to grounds 6 and 13.

16    Grounds 7, 8, 9, 10, and 14

17    In ground 7, Fillmore claims that the application of the deadly weapon enhancement

18 in his sentencing violated his constitutional right to due process of law and his constitutional right to

19 be free of double jeopardy.  Petition, pp. 15-15E.  In ground 8, Fillmore claims that the application of

20 the deadly weapon enhancement in his sentencing violated his constitutional right to equal protection

21 of the laws.  *Id*. at 17-17D.  In ground 9, Fillmore claims that Nevada's deadly weapon enhancement

22 statute (NRS 193. 165) is unconstitutionally vague, and its application violated his constitutional

23 right to due process of law.  *Id*. at 19-19B.  In ground 10, Fillmore claims that his constitutional

24 rights were violated because his counsel was ineffective in not objecting to the application of the

25 deadly weapon enhancement statute on the ground that it is not applied equally to all similarly

26 situated persons.  *Id*. at 21-21C.  In ground 14, Fillmore claims that the cumulative effect of

1   prosecutorial misconduct, including, specifically, an instance where the prosecutor impeached his

2   own witness, violated his constitutional right to due process of law.  *Id*. at 29-29B.

3        In its order on the direct appeal, the Nevada Supreme Court ruled as follows with

4   respect to these claims:

5        These claims could all have been raised on direct appeal and the district court
         therefore correctly denied the petition as to those claims.

6

7   Order of Affirmance, Exhibit 14, p. 2 (citing NRS 34.810(1)(b)(2) and *Franklin v. State*, 110 Nev.

8   750, 752, 877 P.2d 1058, 1059 (1994) (holding that direct appeal claims not raised on direct appeal

9   are waived in subsequent proceedings), overruled on other grounds by *Thomas v. State*, 115 Nev.

10  148, 979 P.2d 222 (1999)).

11       The respondents assert that these claims are procedurally defaulted.  "Procedural

12  default" refers to the situation where a petitioner in fact presented a claim to the state courts but the

13  state courts disposed of the claim on procedural grounds, instead of on the merits.  A federal court

14  will not review a claim for habeas corpus relief if the decision of the state court regarding that claim

15  rested on a state law ground that is independent of the federal question and adequate to support the

16  judgment.  *Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991).

17       The *Coleman* Court stated the effect of a procedural default, as follows:

18       In all cases in which a state prisoner has defaulted his federal claims in state court
         pursuant to an independent and adequate state procedural rule, federal habeas review

19       of the claims is barred unless the prisoner can demonstrate cause for the default and
         actual prejudice as a result of the alleged violation of federal law, or demonstrate that

20       failure to consider the claims will result in a fundamental miscarriage of justice.

21  *Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485 (1986).

22       To demonstrate cause for a procedural default, the petitioner must be able to

23  "show that some objective factor external to the defense impeded" his efforts to comply with the

24  state procedural rule.  *Murray*, 477 U.S. at 488.  For cause to exist, the external impediment must

25  have prevented the petitioner from raising the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 497

26  (1991).

1        Ineffective assistance of counsel may satisfy the cause requirement to overcome a

2   procedural default.  *Murray*, 477 U.S. at 488.  However, for ineffective assistance of counsel to

3   satisfy the cause requirement, the independent claim of ineffective assistance of counsel, itself, must

4   first be presented to the state courts.  *Id*. at 488-89.  In addition, the independent ineffective

5   assistance of counsel claim cannot serve as cause if that claim is procedurally defaulted.  *Edwards v.*

6   *Carpenter*, 529 U.S. 446, 453 (2000).

7        With respect to the prejudice prong of cause and prejudice, the petitioner bears "the

8   burden of showing not merely that the errors [complained of] constituted a possibility of prejudice,

9   but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with

10  errors of constitutional dimension."  *White v. Lewis*, 874 F.2d 599, 603 (9th Cir. 1989) (citing *United*

11  *States v. Frady*, 456 U.S. 152, 170 (1982)).  If the petitioner fails to show cause, the court need not

12  consider whether the petitioner suffered actual prejudice.  *Engle v. Isaac*, 456 U.S. 107, 134 n.43

13  (1982); *Roberts v. Arave*, 847 F.2d 528, 530 n.3 (9th Cir. 1988).

14       In *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003), the court of appeals

15  announced a burden-shifting test for analyzing adequacy.  Under *Bennett*, the state carries the initial

16  burden of adequately pleading "the existence of an independent and adequate state procedural ground

17  as an affirmative defense."  *Id*. at 586.  The burden then shifts to the petitioner "to place

18  that defense in issue," which the petitioner may do "by asserting specific factual allegations that

19  demonstrate the inadequacy of the state procedure, including citation to authority demonstrating

20  inconsistent application of the rule."  *Id*.  When the petitioner has met his burden, "the ultimate

21  burden" of proving the adequacy of the state bar rests with the State, which must demonstrate "that

22  the state procedural rule has been regularly and consistently applied in habeas actions."  *Id*.

23       Here, the respondents have pled the existence of an independent and adequate state

24  ground – NRS 34.810.  Answer (docket #14), pp. 12-13.

25       Petitioner claims in general terms that this procedural rule is not adequate, in that it is

26  applied inconsistently by the Nevada courts.  *See* Traverse (Reply) (docket #18), pp. 16-19.

1  Petitioner has not asserted specific factual allegations demonstrating the inadequacy of the state

2  procedure.  While he cites to Nevada authority, Fillmore's argument does not focus on the time

3  period from 2002 to 2004, which was the period between the Nevada Supreme Court's ruling on his

4  direct appeal and that court's ruling on the appeal from the denial of the state habeas petition.

5  Furthermore, Fillmore's argument does not take into account the differing treatment of Nevada's

6  procedural rules in capital and non-capital cases.

7       In *Vang v. Nevada*, 329 F.3d 1069 (9th Cir. 2003), looking at the period 1988 through

8  1991, the Ninth Circuit Court of Appeals held that, at least in non-capital cases, the Nevada courts

9  consistently applied NRS 34.810.  *Vang,* 329 F.3d at 1073-74.  Fillmore has made no colorable

10 assertion that there was any change in the Nevada courts' handling of this procedural rule between

11 1991 and 2004.  Fillmore has not made any assertion that, between 2002 and 2004 the Nevada

12 Supreme Court inconsistently applied NRS 34.810 in non-capital cases.

13      Fillmore does not attempt to show cause and prejudice, with respect to the procedural

14 default.

15      Fillmore does, however, argue that the court should overlook the procedural default,

16 and resolve grounds 7, 8, 9, 10, and 14 on their merits, because he claims actual innocence.

17 Traverse, p. 19.  The Supreme Court established the standard to overcome a procedural default, on

18 the basis of a fundamental miscarriage of justice, in *Schlup v. Delo*, 513 U.S. 298 (1995).  "In order

19 to pass through *Schlup's* gateway, and have an otherwise barred constitutional claim heard on the

20 merits, a petitioner must show that, in light of all the evidence, including evidence not introduced at

21 trial, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a

22 reasonable doubt.'"  *Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2003) (quoting *Schlup*, 513 U.S.

23 at 327).  To meet this standard, "[a] petitioner need not show that he is 'actually innocent' of the

24 crime he was convicted of committing; instead, he must show that 'a court cannot have confidence in

25 the outcome of the trial.'"  *Majoy*, 296 F.3d at 776 (quoting *Schlup*, 513 U.S. at 316).

26      Fillmore does not meet this standard.  The evidence against Fillmore at trial was

15

strong.  The only new evidence offered on these habeas proceedings consists of the three shotgun shells discussed above with regard to ground 5; the court does not find that evidence to be compelling, when viewed against the backdrop of the evidence at trial.  There is no showing that there will be a fundamental miscarriage of justice if the procedural default is upheld.

Consequently, on grounds of procedural default, the court will deny Fillmore habeas corpus relief with respect to grounds 7, 8, 9, 10, and 14.

Ground 11

In ground 11, Fillmore claims that his constitutional rights were violated because his counsel was ineffective on his direct appeal for failing to raise all viable issues, and for failing to assert the federal constitutional ramifications of the issues that were raised.  Petition, pp. 23-23B.  This claim is meritless.

A look at Fillmore's opening brief on his direct appeal reveals that, in fact, Fillmore's appellate counsel did assert federal constitutional violations with respect to most of the issues raised on appeal.  *See* Exhibit 5.

Three of the issues raised on the direct appeal are reiterated in the habeas petition in this case as grounds 12, 13, and 16.  There has been no argument by respondents that any of the claims in grounds 12, 13, and 16 is unexhausted in state court or procedurally defaulted.  As to these claims, ground 11 is simply belied by the record.

Respondents argue, and the court finds, that ground 14 is procedurally defaulted.  *See* discussion of grounds 7, 8, 9, 10, and 14, *supra*.  Fillmore may argue that his counsel was remiss with respect to the manner that issue was asserted on appeal.  However, ground 14 is a claim of cumulative error.  In ground 14, Fillmore claims that he was prejudiced by the cumulative effect of the prosecutorial misconduct he alleges.  This court finds that there was no prosecutorial misconduct arising to a constitutional violation, whether the alleged misdeeds of the prosecution are considered individually or cumulatively.  *See* discussion of ground 12, *infra*.  Ground 14 would not be a meritorious basis for relief in this action, even if it were not procedurally defaulted.

1      Also, Fillmore may argue that his counsel was ineffective for failing to properly raise

2   the federal constitutional implications of the claims in ground 15.  The court has found ground 15 to

3   be unexhausted in state court.  *See* Order entered June 6, 2008 (docket #22).

4      In ground 15, petitioner asserts that the "District Court erred in allowing the

5   prosecution to introduce prior Bad Act evidence, in violation of Petitioner's right to due process as

6   guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution."  Petition for

7   Writ of Habeas Corpus (docket 6), p. 31A.

8      Questions regarding the admissibility of evidence are primarily questions of state law,

9   not subject to challenge in a federal habeas corpus action.  A writ of habeas corpus is available under

10   28 U.S.C. § 2254(a) only on the basis of a transgression of federal law binding on the state courts;

11   the writ is unavailable for alleged error in the interpretation or application of state law.  *See Engle v.*

12   *Isaac*, 456 U.S. 107, 119 (1982); *Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir. 1991);

13   *Middleton v. Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985), *cert. denied*, 478 U.S. 1021 (1986).  With

14   respect to evidence of prior bad acts, the Ninth Circuit Court of Appeals has held that the admission

15   of such evidence violates the constitutional guarantee of due process of law where there are no

16   permissible inferences that the jury could draw from the evidence.  *See McKinney v. Rees*, 993 F.2d

17   1378, 1384 (9th Cir.1993); *Jammal*, 926 F.2d at 920.  Even then, the evidence must be of such a

18   highly inflammatory nature as to necessarily prevent a fair trial.  *Jammal*, 926 F.2d at 920-21.

19   Fillmore's claims in ground 15 do not approach these standards.  The court concludes that Fillmore

20   was not prejudiced by any failure on the part of his counsel with regard to the failure to exhaust the

21   claims in ground 15 on the direct appeal.

22      Finally, Fillmore might (but does not explicitly) claim that his counsel on his direct

23   appeal was ineffective for not raising the claims raised in this action in grounds 7, 8, 9, and 10, the

24   other claims (besides ground 14) found by this court to be procedurally defaulted.  *See* discussion of

25   grounds 7, 8, 9, 10, and 14, *supra*.  Grounds 7, 8, 9, and 10 all involve Fillmore's contention that the

26   imposition of a deadly-weapon enhancement in this case violated his constitutional rights.  The court

finds these claims to be patently without merit.  There was strong evidence at trial showing that Fillmore shot Hamilton in the face with a shotgun.  Fillmore has not made any colorable argument, or cited to any federal authority holding, that the federal constitution precludes the application of Nevada's deadly-weapon enhancement in this case.  "Failure to raise a meritless argument does not constitute ineffective assistance."  *Boag v. Raines,* 769 F.2d 1341, 1344 (9th Cir. 1985), *cert. denied*, 474 U.S. 1085 (1986) (*citing Cooper v. Fitzharris*, 551 F.2d 1162, 1166 (9th Cir. 1977).

The court will deny habeas corpus relief with respect to ground 11.

Ground 12

In ground 12, Fillmore claims that his constitutional rights were violated because of prosecutorial misconduct.  Petition, pp. 25-25K.  Here, Fillmore focuses on four alleged misdeeds of the prosecution: (1) the prosecutor delayed testing of exculpatory evidence; (2) the prosecutor met with groups of witnesses, resulting in a change of recollection on the part of the witnesses; (3) in his rebuttal argument, the prosecutor exceeded the scope of the closing argument of the defense; and (4) the prosecutor misstated the evidence in his rebuttal argument.  Petition, pp. 25-25K.

With respect to Fillmore's claim that the prosecution improperly delayed in testing exculpatory evidence, the Nevada Supreme Court ruled that "there is no evidence that Fillmore was prejudiced by the state's alleged delay in testing exculpatory evidence ...."  Order of Affirmance, Exhibit 8, p. 1.   The Nevada Supreme Court's ruling on this claim was not objectively unreasonable.

Furthermore, Fillmore has pointed to no federal law, as determined by the Supreme Court of the United States, requiring the prosecution in a criminal case to perform any particular tests on alleged exculpatory evidence in a punctual manner.

With respect to Fillmore's claim that the prosecutor met with groups of witnesses, resulting in a change of recollection on the part of the witnesses, the Nevada Supreme Court ruled that there was "[no] evidence, beyond Fillmore's bare allegations, that the State falsified witness testimony."  Order of Affirmance, Exhibit 8, pp. 1-2.  Here again, the Nevada Supreme Court's ruling is not objectively unreasonable.

1    Essentially, Fillmore claims that the testimony of certain witnesses changed between

2  the preliminary hearing and the trial, and he claims the change was the result of improper influence

3  on the part of the prosecutor.  *See* Petition, pp. 25D-25F.  The perceived change in the witnesses'

4  testimony was naturally a subject of cross examination, and was for the jury to consider.  Fillmore's

5  claim that prosecutorial misconduct caused some change in testimony is unsupported by any

6  evidence, and appears to be speculation.  The mere fact that the prosecutor brought witnesses

7  together for a meeting does not necessarily indicate any improper conduct on the part of the

8  prosecutor.

9    Fillmore's last two claims of prosecutorial misconduct are that, in his rebuttal

10  argument, the prosecutor exceeded the scope of the closing argument of the defense and

11  misrepresented evidence.  The Nevada Supreme Court ruled that "the prosecutor's rebuttal argument

12  did not exceed the scope of Fillmore's closing argument because all of the issues argued by the state

13  in its rebuttal had been raised by Fillmore in his closing argument."  Order of Affirmance, Exhibit 8,

14  p. 2.  And, as for the alleged misrepresentation of evidence – the evidence being a photograph of the

15  shotgun with which Hamilton was shot – the Nevada Supreme Court ruled that "the prosecutor did

16  not make an usupported factual statement because he was drawing a permissible inference as to the

17  amount of blood that was visible on the murder weapon."  *Id*. at 2.  Trial courts generally are

18  afforded vast discretion with respect to the management of trials.  *See*, *e.g.*, *United States v. Goode*,

19  814 F.2d 1353, 1354 (9th Cir. 1987).  The Nevada Supreme Court's rulings on these claims were

20  not objectively unreasonable.

21    In reviewing a claim of prosecutorial misconduct in a habeas action, the crucial

22  question is whether the conduct "so infected the trial with unfairness as to make the resulting

23  conviction a denial of due process."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal

24  quotation marks and citation omitted).  The "touchstone of due process analysis in cases of alleged

25  prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v.*

26  *Phillips*, 455 U.S. 209, 219 (1982).  In reviewing the prosecutor's rebuttal argument, in the context

1    of the entire trial, this court finds that any impropriety with respect to the scope of the rebuttal

2    argument, and any inaccuracy in the prosecutor's argument regarding the photograph of the shotgun,

3    did not deprive Fillmore of a fair trial.

4         The court will deny habeas corpus relief with respect to ground 12.

5         <u>Ground 16</u>

6         In ground 16, Fillmore claims that, in violation of his right to due process of law,

7    there was insufficient evidence at trial to support the jury's verdict.  Petition, pp. 33-33C.

8         With respect to this claim, the Nevada Supreme Court ruled as follows:

> We conclude that there was sufficient evidence to support Fillmore's conviction for attempted murder.  While Fillmore points to several inconsistencies in the testimony of the State's witnesses, these minor inconsistencies fell within the jury's ability to weigh the credibility of witnesses.  Additionally, the inconsistencies raised by Fillmore generally do not pertain to the testimony of Hamilton, who provided the key testimony against Fillmore.

13   Order of Affirmance (Exhibit 8), pp. 3-4 (footnote omitted).

14        When a habeas petitioner challenges the sufficiency of evidence to support his

15   conviction, the court reviews the record to determine "whether, after viewing the evidence in the

16   light most favorable to the prosecution, any rational trier of fact could have found the essential

17   elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979);

18   *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).  The court must assume that the jury resolved any

19   evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Jackson*,

20   443 U.S. at 326; *Schell v. Witek*, 218 F.3d 1017, 1023 (9th Cir. 2000) (*en banc*).  The credibility of

21   witnesses is beyond the scope of the court's review of the sufficiency of the evidence. *See Schlup v.

22   Delo*, 513 U.S. 298, 330 (1995).  Under the *Jackson* standard, the prosecution has no obligation to

23   rule out every hypothesis except guilt. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion);

24   *Jackson*, 443 U.S. at 326;  *Schell*, 218 F.3d at 1023. *Jackson* presents "a high standard" to habeas

25   petitioners claiming insufficiency of evidence. *Jones*, 207 F.3d at 563.

26        The court concludes that the Nevada Supreme Court reasonably applied the *Jackson*

1    standard.  There was ample evidence to support Fillmore's conviction.  Most notably, Hamilton

2    testified, and described in detail how Fillmore shot him in the face with a shotgun.  *See* Exhibit 16a,

3    part 2, pp. 60-65.

4              The court will deny habeas corpus relief with respect to ground 16.

5              Ground 17

6              In ground 17, Fillmore claims that his constitutional rights were violated as a result of

7    the cumulative effect of the errors alleged in his habeas petition.   Petition, pp. 35-35B.

8              The court concludes that Fillmore has not shown any constitutional deficiency

9    concerning his conviction or sentence, either when his claims are viewed individually or

10   cumulatively.   The Nevada Supreme Court's rejection of Fillmore's cumulative error claim was not

11   objectively unreasonable.

12             The court will deny habeas corpus relief with respect to ground 17.

13   Certificate of Appealability

14             The standard for issuance of a certificate of appealability calls for a "substantial

15   showing of the denial of a constitutional right."  28 U.S.C. § 2253(c).  The Supreme Court

16   interpreted 28 U.S.C. § 2253(c) as follows:

17                      Where a district court has rejected the constitutional claims on
             the merits, the showing required to satisfy §2253(c) is straightforward:
18           The petitioner must demonstrate that reasonable jurists would find the
             district court's assessment of the constitutional claims debatable or
19           wrong.  The issue becomes somewhat more complicated where, as
             here, the district court dismisses the petition based on procedural
20           grounds.  We hold as follows: When the district court denies a habeas
             petition on procedural grounds without reaching the prisoner's
21           underlying constitutional claim, a COA should issue when the prisoner
             shows, at least, that jurists of reason would find it debatable whether
22           the petition states a valid claim of the denial of a constitutional right
             and that jurists of reason would find it debatable whether the district
23           court was correct in its procedural ruling.

24   *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also James v. Giles*, 221 F.3d 1074, 1077-79

25   (9th Cir. 2000).  The Supreme Court further illuminated the standard for issuance of a certificate of

26   appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  In that case, the Court stated:

21

1
2
3

> We do not require petitioner to prove, before the issuance of a COA, that some jurists would grant the petition for habeas corpus. Indeed, a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail.

4   *Miller-El*, 537 U.S. at 338 (quoting *Slack*, 529 U.S. at 484).

5        Applying these standards in this case, the court finds that Fillmore qualifies for a

6   certificate of appealability with respect to grounds 5 and 12.

7        **IT IS THEREFORE ORDERED** that the petition for writ of habeas corpus

8   (docket #6) is **DENIED**.

9        **IT IS FURTHER ORDERED** that the Clerk shall **ENTER JUDGMENT**

10  **ACCORDINGLY.**

11       **IT IS FURTHER ORDERED** that petitioner is **GRANTED A CERTIFICATE OF**

12  **APPEALABILITY** with respect to the issues raised in grounds 5 and 12 of his petition for writ of

13  habeas corpus.  With respect to all other issues raised in this case, petitioner is denied a certificate of

14  appealability.

15       Dated this 23rd day of September, 2008.

16

17

18  UNITED STATES DISTRICT JUDGE

19
20
21
22
23
24
25
26